## GEORGE HOPSON AND ANOTHER vs. THE ÆTNA AXLE AND SPRING COMPANY.

The defendant, a manufacturing corporation, made its note for $40,000, payable to its own order, and the plaintiffs, with three others, all directors of the company, guaranteed its payment; the company making a mortgage to the guarantors of nearly all its property as security for their liability. The object was to raise money to pay the floating indebtedness of the company and enable it to go on with its business. Held that the directors had power to borrow money for this purpose and to give necessary security; and that the mortgage was therefore valid, although it conveyed all or nearly all the property of the company.

And that it did not alter the case that the directors themselves were the guarantors for whose security the mortgage was taken.

The company, having received the money borrowed and used it in paying its debts, would seem not to be in a position to claim that the mortgage was invalid.

A savings bank, which was the holder of the guaranteed note, requiring payment of the guarantors, they paid $20,000 in cash and gave a note for the balance, leaving the original $40,000 note as collateral security for the new note. Held that the question whether the transaction was a payment of the original note or a purchase of it, was one of fact, and therefore not properly a question for this court; but that, upon a reasonable interpretation of the finding, it was to be regarded as a payment by the guarantors as such.

And held that, if the guarantors paid the note as such, they were not to be regarded as having paid when they were discharged from their liability by reason of the holder not having used due diligence to collect the note of the maker. The company, being itself the maker, could not make this objection. The rule being one for the protection of the guarantors, they could waive the benefit of it.

The note being payable to the company's own order, and endorsed in blank by the company for the purpose of raising money upon it, the guarantee was to be regarded as intended for any holder of the note, and, at least in equity, followed the note into the hands of every holder.

The delivery of an endorsed note as collateral security does not divest the party delivering it of his equitable interest in the note, and he may properly bring a suit for the foreclosure of a mortgage given to secure it. A

court of equity would not dismiss such a suit, but would require the party holding the note to be brought in as a party before passing a decree. And where, during the pendency of a suit so brought, the note was returned to the plaintiff, there was no longer any reason for making the former holder of it a party.

PETITION for the foreclosure of a mortgage; brought to the Superior Court. Facts found by a committee and decree passed (*Stoddard, J.*) Appeal by the defendants. The case is sufficiently stated in the opinion.

*R. E. DeForest* and *V. R. C. Giddings,* for the appellants.

*A. S. Treat* and *H. S. Sanford,* for the appellees.

CARPENTER, J. This is a petition to foreclose a mortgage given by the respondents to the petitioners and J. M. Bullock, Samuel Wilmot and Henry Buckingham, dated October 30th, 1872. The condition, so far as it is material, is as follows:—" Whereas J. M. Bullock, Samuel Wilmot, Henry Buckingham, George Hopson and George B. Waller have this day jointly endorsed a certain promissory note, bearing even date herewith, made and signed by the grantor in this deed, in and by which the said grantor promised to pay to its own order on demand the sum of forty thousand dollars, with interest at the rate of seven per cent. payable semi-annually in advance, to be used by said grantor in obtaining a loan of money of the amount specified in said note; * * and whereas the said grantor did, when said several endorsements were made, promise the said joint endorsers of said note of forty thousand dollars, and the said several endorsers of said several notes by them endorsed, to indemnify and save them harmless against all loss and damage which should arise from said endorsements, and pay each and all of said notes to the several holders thereof, and all notes which may be made in renewal thereof:—Now therefore, if the said grantor shall well and truly indemnify and save harmless each and all of said endorsers against all loss and damage which shall arise from said

endorsements, and pay each and all of said notes to the several holders thereof, and all notes which may be made in renewal thereof, when requested by the holders thereof, or by any of said endorsers, then said deed shall be void."

The note was discounted for the benefit of the respondents by the City National Bank of Bridgeport. It was afterwards transferred to the City Savings Bank. The savings bank demanded payment of Hopson, Waller and Wilmot, who were then directors of the respondent corporation; Hopson being also its president. Hopson, Waller, Wilmot, and one Clark, paid the note. Afterwards Clark and Wilmot assigned all their interest in the note to Hopson and Waller, the petitioners. This was in January, 1876. Early in March following the respondents paid on the note upwards of twenty-six thousand dollars, leaving due thereon upwards of thirteen thousand dollars.

The payment to the savings bank was made as follows:— Cash $20,000, and a note payable to the savings bank signed by Hopson, Waller, Wilmot and Clark, for $20,700— the $700 being for interest. After the note for $40,000 was paid Hopson and Waller erased the names of Bullock, Wilmot, Hopson and Waller as guarantors. In April Hopson and Waller gave to the savings bank the note for $40,000 as collateral security for the note for $20,700, and that was the condition of things when this petition was brought.

Upon these facts the Superior Court expressed the opinion that a decree of foreclosure should not be granted so long as the note in question was held as collateral security in the hands of parties not parties to this proceeding. Subsequently, upon evidence offered by the petitioners and objected to by the respondents, the court found that the City Savings Bank had no title to or interest in the note and that it had been returned to the petitioners. Thereupon a decree of foreclosure was granted and the respondents appealed.

We will first consider the claim that the mortgage is invalid for the reason that it was not authorized by a vote

of the stockholders, and that it was a conveyance of all or nearly all the property of the corporation, and subversive of its object and purposes, and therefore contrary to public policy. We readily concede that a sale of all the property of a corporation which practically winds up its affairs must be authorized by the stockholders. The statute provides for dissolving a corporation, and when that is the object the statutory mode should be resorted to. But this transaction was of a different character. The design was not to stop business, but to continue it—not to sell the property but to raise money to pay debts. Now, if we concede to the directors the power to borrow money for legitimate purposes, and we suppose that that must be conceded, then it follows that they have power to give security. This transaction was borrowing money on a mortgage security. The money borrowed was used to pay the floating debts of the company to enable it to pursue its ordinary business with less embarrassment. And it does not alter the case that the directors who are the mortgagees were liable as endorsers. It still remains true that the company had the money. Having received and used the money raised upon the credit of the security, we hardly think the company is in a condition to claim that the security is void as being unauthorized.

Another claim is, that the petitioners did not pay the note as guarantors but as purchasers; and that the breach of the condition as alleged in the petition is the failure of the company to indemnify the petitioners as guarantors. This objection is technical and does not involve the real merits of the case. The report of the committee is ambiguous on this point. An inference may be drawn from the circumstances, and especially from the fact that the note was kept alive as a continuing obligation, that they purchased the note; but that is an inference of fact and not of law. It is not for this court to draw inferences of fact, and we are not inclined to do so for the purpose of reversing a judgment evidently just.

Notwithstanding some apparent inconsistencies we think

the judgment may be sustained by interpreting the report as finding in effect that the note was paid by the petitioners as guarantors.   The expression in the report is that they "paid said note to said Savings Bank and took up the same."   Again, in the supplemental report, that "said note was paid to said City Savings Bank by said Waller, &c., in the following manner."   The word "pay" indicates the discharge of an obligation rather than an investment of money.

When we consider the situation of the parties at the time we cannot doubt that they paid the note to the bank, because of their names being on it as guarantors, and that they intended to discharge an obligation and did not intend a mere purchase of the note.

They next object that the guarantors were not liable as such for the reason that the holder of the note made no effort to collect it when due of the makers.   We do not think that the makers can make this objection.   Their duty to pay the note was absolute, not contingent.   The liability of a guarantor is ordinarily contingent upon the use of due diligence by the holder, and in a suit against the guarantor he may set up the want of such diligence as a defense.   He is aggrieved by the omission.   But the maker is not aggrieved.   His liability does not depend upon due diligence. It is not for him to complain that he has not been sued and his property attached.   Due diligence being required for the benefit of the guarantors, they had a right to waive it. They had a right to become the holders of the note by purchase independently of the guarantee, and the liability of the makers is essentially the same whether the guarantors purchased it or paid it as guarantors.

It is next claimed that the guarantee was not negotiable, and that the savings bank as holder of the note had no claim on the guarantors.   It may be that the guarantee was not negotiable in the sense that the holder of the note, who is not the payee, may maintain a suit thereon in his own name ; but it does not follow that he may not maintain a suit in the name of the payee.   The guarantee in this case

was clearly intended for the benefit of the holder and not of the payee. The payee is the maker, and it would be absurd to hold that it was only for the benefit of the payee and would not enure to the benefit of the holder as the parties intended it; and it would be equally absurd to hold that it was limited to the first holder. The note itself was negotiable, and the guarantee was intended as security for the note. The security, in equity at least, attached to the note, and was available to the holder whoever he might be. The question of negotiability affects only the form of the remedy and not the substance.

The respondents also insist that the court erred in admitting the evidence of the release to the petitioners by the savings bank of its interest in the note in suit; that when the petition was brought, and during the entire time of the trial, they had a good defense, and were entitled to a decree dismissing the bill.

The view we have taken of the case makes this question of little importance. If the petitioners paid the note as guarantors, as we think they did, the note was discharged, and after that was not of itself evidence of a debt; it was not an obligation, but simply a voucher. The transfer of a mere voucher did not operate as an assignment of a chose in action. But this was not an assignment of a voucher even; it was simply a pledge. Ordinarily a pledge conveys no title to the pledgee. He has a possessory right only, the title remaining in the pledgor. The pledge of a voucher, which was only evidence tending to prove the petitioners' claim, did not divest the petitioners of their interest in the claim itself. It was still competent for them to bring the petition. Even if the claim itself had been pledged, and in the form as it was of an indorsed note, we think that the petition would not have been dismissed. The petitioners still owned the claim in equity and were the parties principally interested in enforcing it. The savings bank had such an interest that a court of equity would require it to be made a party before passing a decree; but the court would not for that cause dismiss the bill. We think that the surrender of the

Hopson *v.* Ætna Axle and Spring Co.

pledge operated to divest the savings bank of all its interest in the subject matter, so that the court might properly render judgment without making it a party. That being so in respect to the claim, it must clearly be so in respect to a voucher which is but evidence of a claim.

There is no error in the judgment complained of.

In this opinion the other judges concurred.