## James L. O'Donnell, as Assignee of Henry Fish & Sons, and Chauncey J. Blair, Trustee, et al., v. The Illinois Steel Company et al.

1. FRANCHISE—*Dissolution of a Corporation.*—A franchise is involved in a suit in equity to dissolve a corporation and the appointment of a receiver to wind up its affairs.

2. APPEALS — *Jurisdiction — Question of Franchise Not Raised.*— Where, in a suit being brought to dissolve a corporation and to wind up its affairs, the corporation does not appeal from the decree and no errors are assigned by the parties appealing calling in question the decree upon that subject, the question of jurisdiction can not be raised.

3. JURISDICTION—*How Determined on Appeal.*—The jurisdiction of the Appellate Court is to be determined by the questions involved in the appeal.

4. CORPORATION—*Power of a Director to Loan it Money.*—Ordinarily, a director is not prohibited from lending money to his corporation when needed, and taking security for the loan. Such transaction constitutes a well recognized exception to rules imposing limitations upon the power of a director to deal with his corporation. There is no interest in the director, in such case, conflicting with his duty to the corporation, and such a transaction, if otherwise free from blame, is not affected by his relation to the corporation.

5. CORPORATIONS—*Loans to, by Directors of Insolvent, etc.*—If, at the time a loan is made by a director to his corporation, its condition is such as to place him in a fiduciary relation toward its creditors, it would be essential to the right of a creditor to set aside the transaction that he should prove that the director had obtained some advantage, or that such creditor had suffered some injury by such transaction.

6. DIRECTORS—*Loans to Corporations—When Invalid.*—If a director, in making a loan to his corporation, has secured an advantage to himself, resulting in disadvantage to other creditors, then the transaction

may be set aside. To have that effect, however, it would be necessary to show that some asset of the corporation in which the creditor had an equitable share, had been appropriated in some way to the benefit or advantage of the director.

7. ATTORNEY'S FEES—*When Legal.*—When a condition in a note for the allowance of attorney's fees is once lawfully made, it does not become illegal because continued in a renewal of the note by the original maker after he has become insolvent.

8. PREFERENCES—*By Corporations.*—An insolvent corporation may prefer one creditor over another, but this rule is subject to the qualification that the property of the insolvent corporation is a trust fund to be applied to the payment of the debts of the corporation, and the directors, being trustees of the fund, can not, in the disposition of it, secure any advantage to themselves not shared equally by other creditors.

9. SAME—*By Directors of an Insolvent Corporation.*—Directors of a corporation can not be permitted to deal with the fund in such a manner as to secure preferences to themselves, although they may in good faith give preferences where they have no personal interest.

10. CORPORATIONS—*Rights of Director Creditors.*—Directors may enforce any contract and avail themselves of any security made or given before the fiduciary relation attaches, but after that time they can not acquire any advantage over other creditors.

11. ASSIGNMENT FOR THE BENEFIT OF CREDITORS.—*Giving a Mortgage is Not.*—Giving a mortgage to secure indebtedness is not making an assignment for the benefit of the mortgagor's creditors. A mortgage would frequently be but an indifferent sort of security under such a rule.

12. SAME—*Right of a Secured Creditor To Prove His Claim.*—A creditor who has, after the appointment of a receiver and before making proof of his claim, been paid a part of such claim by realizing upon collaterals, is not entitled to prove the claim for more than is due him when he proves it.

**Memorandum.**—In chancery. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the December term, 1893. Affirmed in part and reversed in part and remanded with directions. Opinion filed March 1, 1894.

The opinion states the case.

APPELLANTS' BRIEF, E. A. OTIS, GEORGE S. HOUSE AND P. C. HALEY, ATTORNEYS.

The plaintiff in the trial court may not have recovery without his declaration, so appellant or plaintiff in error may not question any error not within the assignment of errors, duly assigned on the record. As to an error not so

assigned, the appellant or plaintiff in error is held to be pre cluded. Ditch v. Sennott, 116 Illinois, 288; Bennson v. Savage, 119 Illinois, 135; Gage v. Brown, 125 Illinois, 522; Mansfield v. Allison, 16 Appl. 31; Quigley v. Harold, 22 Appl. 269.

It is a rule, settled in this State by repeated decisions of our Supreme Court, that one defendant can not assign an error, committed against his co-defendant, when he is in no manner affected by the error. Each defendant must stand on his rights and look after his individual interests. Greenman v. Harvey, 53 Ill. 386; Fonville v. Sausser, 73 Ill. 451; Clark v. Marfield, 77 Ill. 258; Robinson v. Brown, 82 Ill. 279; Stone v. Wood, 85 Ill. 603; Brown v. Miner, 128 Ill. 148; Town Mining Co. v. Cady, 96 Ill. 430.

A court of equity in the absence of statutory authority, has no jurisdiction to decree the dissolution of a corporation. Baker v. Bachus, 32 Ill. 79; Mutual Life v. Hunt, 127 Ill. 257; Ward v. Farwell, 97 Ill. 593; Chicago Life v. Auditor, 101 Ill. 82.

In this State, a corporation is a legal entity, and for the due exercise of its corporate powers, has all the powers of the natural person. It may contract, it may incur debts, it may sue and be sued. In the making of contracts, and the incurring of debts, its property may be reached for damages, resulting from the non-performance of its contracts, or is liable to be taken in satisfaction of its debts, to the like, if not greater, extent than is the property of the natural person.

To the natural person, if circumstanced as the law requires, certain exemptions exist. None such exist to the corporation. All its property is liable to be taken for its debts.

The natural person may not dispose of his property to hinder and delay his creditors. The corporation is held within the same limitations.

The natural person may employ his property in satisfaction of its debts, equally; as well may the corporation so use its property.

The natural person, prior to the assignment act of 1877, could in a common law assignment, prefer one creditor over others, he acting in good faith. Howell v. Edgar, 3 Scam. 417; Powers v. Green, 14 Ill. 386; Farwell v. Nilsson, 133 Ill. 45. It makes no difference that the creditor knows, when he accepts the preference, that the debtor is insolvent. Frey v. Harrison, 29 App. 243.

The relationship of the creditor and the debtor is immaterial, so long as the debt is *bona fide* and the transaction is within the rule of good faith. Heeren v. Kilsin, 28 Ill. App. 259.

The right of the creditor to avail himself of the preference is not affected by knowledge on his part, that there are other demands against the debtor, which must go unpaid. Axtell v. Cullen, 3 Ill. App. 527.

The motive of the debtor, in giving a preference to one creditor, is not subject to inquiry, so long as the creditor has done nothing improper. Thornton v. Davenport, 1 Scam. 296; Funk v. Staats, 24 Ill. 632.

A debtor, in failing circumstances, and who does not seek the benefit of the general assignment act, may prefer one creditor to the exclusion of others, when he does so in good faith. This right to give a preference can only be exercised to the amount actually and lawfully due; hence, where a failing debtor prefers a pre-existing debt, by the delivery of a judgment note, the debtor may not include an attorney's fees for the creditor. Hulse v. Mershon, 125 Ill. 45; Hanchett v. Gardner, 138 Ill. 574.

A failing debtor, in the making of an assignment, prior to the enactment of the general assignment act, could divide his creditors into classes, and provide that creditors of one class should be paid in full, and creditors of another class, ratably. Cross v. Bryant, 2 Scam. 36; Howell v. Edgar, 3 Scam. 417.

A failing debtor, in this State, acting in good faith, may prefer one creditor to the exclusion of other creditors, for a debt owing. Waddams v. Humphrey, 22 Ill. 661; Farwell v. Nilsson, 133 Ill. 45; Weber v. Mick, 131 Ill. 520; Hanchett v. Gardner, 138 Ill. 574.

Prior to the adoption of the general assignment act, a corporation had the power, like and to the same extent as the natural person, to prefer one creditor over and to the exclusion of another. The same power now exists to the corporation, alike as to the natural person, where the corporation does not avail itself of the benefits and advantages of the assignment act. Richwald v. Hotel Co., 106 Ill. 439; Rayland v. McFall, 137 Ill. 81; Glover v. Wells, 40 Ill. App. 354.

Notwithstanding the voluntary assignment act, a debtor, though insolvent, may still secure, by mortgage or confession of judgment or judgment note, or otherwise, a *bona fide* indebtedness, if done in good faith, and not in contemplation of making an assignment, under said act. Schroeder v. Walsh, 120 Ill. 403; Hanford Oil Co. v. First Nat. Bank, 126 Ill. 591; Weber v. Mick, 131 Ill. 532; Farwell v. Nilsson, 133 Ill. 45; Hanchett v. Gardner, 138 Ill. 574.

In this State, a director of a corporation may deal with his corporation. If the corporation is solvent, he deals on the like terms as a stranger. If the corporation is insolvent, he deals at his peril, if the transaction is of benefit to him and an injury to creditors. The transaction is subject to challenge and is liable to be set aside by a creditor, who is injured. If the corporation is insolvent, the transaction of such character is fraudulent, as to creditors. Merrick v. Peru Coal Co., 61 Ill. 279; Harts v. Brown, 77 Ill. 226; Beach v. Miller, 130 Ill. 162.

The dealings of a director with an insolvent corporation is purely one of character, depending, in a great measure, for its standing and validity, upon a question of good faith.

If the money loaned or advanced, for which the security is taken, is not so loaned or advanced for the purpose of obtaining any advantage over the corporation, or its other stockholders or other creditors, but loaned and advanced to conserve and protect the best interests of all persons interested in the corporation, or its property, such transaction is not within the prohibition. Hotel Co. v. Wade, 97 U. S. 12; Richardson v. Green, 133 U. S. 30; Beach v. Miller, 130

O'Donnell v. Illinois Steel Co.

Ill. 162; Gould v. Little Rock et al., 52 Fed. Rep. 680. An insolvent corporation, it is held, acting in good faith, may prefer one creditor to the exclusion of other creditors. Reichwald v. Hotel Co., 106 Ill. 439; Rayland v. McFall, 137 Ill. 81; Glover v. Wells, 40 Appl. 350; Farwell v. Nilsson, 113 Ill. 80; Glover v. Lee, — Ill. 102.

APPELLEES' BRIEF, E. PARMALEE PRENTICE AND WILLIAMS, HOLT & WHEELER, ATTORNEYS.

Appellees contended that an insolvent corporation may not, by payments, conveyances or securities in favor of any director, create a preference over other creditors. If there can be any doubt about this proposition, it is concluded by the recent case of Atwater v. The American Exchange National Bank, decided by the Supreme Court of this State. Chicago Legal News, Nov. 18, 1893; Beach v. Miller, 130 Ill. 102; Roseboom v. Whittaker, 132 Ill. 81.

"A director of an insolvent corporation can not reap any advantage over other creditors of such corporation, and in this case it is held that the interest of an outside party was so blended with that of the directors that he can be held to occupy no better position than the directors, and therefore can not avail himself of the proceeds of a judgment entered in which the directors had a beneficial interest." Chicago Legal News, Nov. 18, 1893.

Upon this subject we call the attention of the court to the very pertinent language of Judge Phillips in the case of Consolidated Tank Line Co. v. Kansas City Varnish Co., 45 Fed. Rep. 7, 13.

"As in the case of a sinking ship, they (the directors) scuttled it, and the crew treated its cargo as common spoil. In the peril of the sea, the thought uppermost in their minds was self-preservation. Having, as they supposed, secured a day's provision for themselves, each director struck out for himself. If they have done a single act to verify their pretension of a purpose to rescue the ship and continue the voyage, the evidence wholly fails to disclose it. Under any

accepted definition of insolvency, this company, on the 25th day of August, 1890, was insolvent. All of its debts could not be collected out of its means. Potter v. McDowell, 31 Mo. 73. There was not a present ability of the debtor to pay out of its own means all its liabilities, nor sufficient property to respond on execution for such satisfaction. Eddy v. Baldwin, 32 Mo. 369. There was an inability to fulfill its obligations according to its undertakings, and a general inability to answer in court for all its liabilities, and with no reasonable assurance in the usual course of trade, of recovering from its embarrassment. Walton v. Bank (Colo.), 22 Pac. Rep. 442. The deed of trust was, in effect, a confession of insolvency. It conveyed all the company had to meet only a part of its liabilities. It virtually took away the ability—the means—of the directory to further prosecute the object of the franchise. While the corporate autonomy was not extinguished in law, it exists merely in a state of suspended animation, with no reasonable hope or assurance of resuscitation. When a corporation, in its business affairs, is thus *in articulo mortis*, whatever may yet be maintained on divided opinions as to its right to dispose of its property so as to give a preference to some general creditor, the law is too well settled, at least in this jurisdiction, to admit of extended discussion, that its directors can not make a disposition of its assets so as to secure to themselves, directly or indirectly, a preference over general creditors. This is the rule of the Missouri courts. Williams v. Jones, 23 Mo. App. 132; Mill Co. v. Kampe, 38 Mo. App. 229; Roan v. Winn, 93 Mo. 503; 4 S. W. Rep. 736. It is not too much to say that it is the established doctrine of the Federal courts. It is strongly maintained by Judge Thayer in the eastern district of this State. White, etc., Mfg. Co. v. Pettes, etc., Co., 30 Fed. Rep. 865; Adams v. Milling Co., 35 Fed. Rep. 433. See, also, Lippincott v. Carriage Co., 25 Fed. Rep. 577; Koehler v. Iron Co., 2 Black, 715–721; Railroad Co. v. Howard, 7 Wall. 392; Oil Co. v. Marbury, 91 U. S. 587.

In Graham v. Railroad Co., 102 U. S. 161, Mr. Justice

Bradley said : " When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then take those trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his."

The most recent discussion of this question is to be found in the very able opinion of Judge Woods, in Howe v. Toole Co., 44 Fed. Rep. 231.   I can not better express the strength of the reason why a director should not be permitted to prefer himself, under circumstances like those under review, than by quoting his language :

" A sound public policy and a sense of common fairness forbid that the directors or managing agents of a business corporation, when disaster has befallen or threatens the enterprise, shall be permitted to convert their powers of management and their intimate, and it may be, exclusive, knowledge of the corporate affairs, into means of self-protection, to the harm of other creditors.   They ought not to be competitors in a contest of which they must be the judges. The necessity for this limitation upon the right to give preferences among creditors, when asserted by a corporation, may not have been perceived in earlier times, but the growing importance and variety of modern corporate enterprises and interests, I think will compel its recognition and adoption.   *   *   *   Whether or not such preferences are fairly given, is an impracticable inquiry; because there can be, in ordinary cases, no means of discovering the truth, and consequently the presumption to the contrary should in every case be conclusive.   Concede that it is a question of proof, and that a preference in favor of a director will be deemed valid if fairly given, and it may as well be declared to be a part of the law of corporations that, in cases of insolvency, debts to directors, and liabilities in which they have a special interest, may first be discharged.   That will be the practical effect, and the examples will multiply of individual enterprises prosecuted under the guise of corporate organizations for

the purpose, not only of escaping the ordinary risks of business done in the owner's name, which may be legitimate enough, but of enabling the promoters and managers when failure comes to appropriate the remains of the wreck by declaring themselves favored creditors.  Besides inconsistency with that quality which equity loves, such favors involve too many possibilities of dishonesty and successful fraud to be tolerated in an enlightened system of jurisprudence."

The same thought was in the mind of Mr. Justice Miller in Sawyer v. Hoag, 17 Wall, 620, when he observed:

"When we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen."

"It is insisted on behalf of the banks that, although the deed of trust may be voidable as against the directors, yet the banks are to be regarded as *bona fide* purchasers.  But are the banks such purchasers?  In the first place, they parted with nothing on the faith of the deed.  They loaned their money, as their evidence shows, on the indorsement of the directors.  They never asked for this deed.  They did not know of its existence until after it was executed and recorded.  They may be accorded the presumption of the law in their favor, that where such a deed is for their benefit they are presumed to accept its provisions.  But it is apparent on the face of the deed and from the facts known to the banks, that the deed inured to the benefit of the directors as indorsers of the notes held by the banks.  The banks could not, therefore, take, without being privy to the wrong attempted by the directors.  If the law were otherwise, the rule would be of no avail which seeks to prevent such directors from 'preferring debts in the payment of which they have a personal interest,' as declared in Adams v. Milling Co., 45 Fed. Rep. 435."

O'Donnell v. Illinois Steel Co.

DUPEE, JUDAH & WILLARD, attorneys for National Bank of the Republic, which assigns cross-errors, appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

This suit in its present form is a consolidation of original suits in equity, the history of which is as follows :

On December 10, 1892, the Will County National Bank and Joseph Stephen filed their bill in the Circuit Court of Will County, alleging, among other things, that the complainant Stephen had recovered a judgment against the Joliet Enterprise Company, a corporation of this State engaged in manufacturing barbed wire, at Joliet; that execution had been issued and returned unsatisfied, and that said corporation was insolvent, and praying for the appointment of a receiver, the dissolution of the corporation, the ascertainment and enforcement of the individual liability of the stockholders and directors, and for such other, further and different relief as might be agreeable to equity.

On December 24, 1892, the Cleveland Rolling Mill Company and the Illinois Steel Company filed their bill in said court, alleging, among other things, that the Cleveland Rolling Mill Company had recovered a judgment against the Joliet Enterprise Company, December 1, 1892, for $17,464.67, on which execution was immediately issued and which remained wholly unpaid and unsatisfied; that said Joliet Enterprise Company was also indebted to the Illinois Steel Company in the sum of $169,751.04; that Charles M. Fish, Henry M. Fish, Francis H. Connell and John T. Brooks were directors and officers of said Joliet Enterprise Company; that said directors Charles M. Fish, George M. Fish and Henry M. Fish together with Henry Fish, their father, composed the firm of Henry Fish & Sons; that on November 30, 1892, the defendant corporation confessed judgment in said Circuit Court in favor of said firm of Henry Fish & Sons, for $176,420.96, on which execution immediately issued and was levied on all the property of the corporation; that on the same day said corporation executed and deliv-

ered a trust deed to Chauncey J. Blair, trustee, securing various creditors to the amount of about $159,000; that said corporation at that time was, and for many months prior thereto had been, insolvent, and that said confession of judgment and trust deed were unlawful attempts to prefer creditors; and praying that James L. O'Donnell, assignee of said firm of Henry Fish & Sons, insolvents, should be enjoined from enforcing said judgment, and that the judgment and trust deed should be set aside and declared null and void; that the trust deed be decreed to be a general assignment for the benefit of creditors; that the assets of the corporation should be marshaled, administered and distributed among all the creditors of the corporation; that liabilities of stockholders, directors and officers should be determined and enforced and that complainants might have such other and further relief as to equity should seem meet.

The whole property of the corporation, except such as was in the custody of the sheriff under the execution in favor of Henry Fish & Sons, and certain attachment writs, had been in the possession of a receiver appointed under a bill in the United States Court; but on the same day that said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company was filed, the bill filed in the United States Circuit Court was dismissed for want of jurisdiction, and George H. Monroe, the former receiver, was appointed receiver under said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company, and took possession as such.

On December 30, 1892, the court on its own motion, and in pursuance of the stipulation and agreement of parties, consolidated the two suits so begun in the Will County Circuit Court, and the appointment of Monroe as receiver was extended over both.

The Joliet Enterprise Company was defaulted on the bill to wind up the corporation, but answered the bill which questioned the judgment confessed and the trust deed, and contested that bill. James L. O'Donnell, assignee of Henry Fish & Sons, in his answer claimed the right to

enforce the judgment in favor of that firm, for the full amount for the benefit of their creditors. The trustees and beneficiaries under the trust deed, in their answers claimed the benefits conferred by the trust deed, and insisted on its validity.

A cross-bill was also filed by Chauncey J. Blair, trustee, and certain of the beneficiaries named in the trust deed, for the foreclosure of the same. The Cleveland Rolling Mill Company and the Illinois Steel Company answered the cross-bill, challenging the validity of the trust deed and setting out substantially the same matters averred in their original bill concerning it.

Joseph S. Wiley and the Ashley Wire Company were brought in as defendants to said cross-bill filed to foreclose the trust deed, and they answered and filed a cross-bill thereto, alleging the recovery of judgments in their favor against the Joliet Enterprise Company, and averring that no execution had issued, because the property of the corporation was in the hands of a receiver, and that the trust deed was an unlawful preference and not authorized, and praying that it should be set aside and declared null and void. Afterward said Joseph S. Wiley and the Ashley Wire Company were, by order of the court, admitted as complainants in the bill of the Will County National bank and Joseph Stephen, and on the hearing of the cause, said Joseph S. Wiley filed an intervening petition setting out the recovery of his judgment and asking to be made a party complainant with the Cleveland Rolling Mill Company and the Illinois Steel Company in their bill.

The prayer of the petition was granted and said Joseph S. Wiley filed a supplemental bill to said bill of the Cleveland Rolling Mill Company and the Illinois Steel Company, alleging that he recovered said judgment, and that no execution was issued because the property of the Joliet Enterprise Company was in the hands of a receiver as aforesaid.

As a result of the hearing the court found that the judgment recovered by confession in favor of the firm of Henry Fish & Sons was based upon six judgment notes of the Joliet

Enterprise Company for $29,000 each, which were given for money actually loaned to said corporation by said Henry Fish & Sons; that said corporation was insolvent March 31, 1892, and thereafter the directors had no right to loan it money and take judgment notes therefor; that four of said judgment notes were renewals of like notes for loans made before March 31, 1892, and two were for loans made after that date; that the corporation had no power to make said last two judgment notes, because three members of said banking firm were members of the corporation; that $1,000 included in the judgment as attorney's fees, could not be sustained, and that $1,420.96 was wrongfully included as interest; and it was decreed that said judgment should stand for $116,000 only, the principal of the four notes held valid.

The findings concerning the trust deed and the rights of the beneficiaries thereunder were, that the several debts secured by the trust deed were all evidenced by notes of the Joliet Enterprise Company; that the debts were not created when the trust deed was made, but had existed a considerable time; that neither the trustee nor any beneficiary knew of the execution and recording of the trust deed until after it was executed and recorded by the officers of the corporation; that in every case except that of Cornelia A. Miller, two or more members of the banking firm of Henry Fish & Sons, who were also directors of the corporation, were bound as guarantors for the payment of the indebtedness by written guaranties indorsed on the notes; that as to such debts so guaranteed, the trust deed was an unlawful attempt on the part of the directors to secure indebtedness for which they were personally liable; that on November 30, 1892, the same day the trust deed was made, the corporation paid to Cornelia A. Miller, on her note, $4,500, leaving due her $500 and interest; that judgment was confessed on said note for $621.35, which included $50 attorney's fee; that said attorney's fee should not be allowed, and that she had a right to rely on the trust deed to the amount of $500 and interest due. The cross-bill to foreclose the trust deed was therefore dismissed with costs for want

of equity except as to said Cornelia A. Miller, and except as to her, was held to be an illegal and fraudulent preference. From this decree an appeal was taken by James L. O'Donnell, assignee of Henry Fish & Sons, and by Chauncey J. Blair, trustee, Merchants National Bank of Chicago, American Trust & Savings Bank of Chicago, Third National Bank of New York, Will County National Bank, First National Bank of Joliet and Washburn & Moen Manufacturing Company, whose claims were secured by the trust deed.

The assignee claims the right to enforce the judgment for the full amount, and the trustee and beneficiaries under the trust deed insist upon its validity as a security for all the claims embraced within its terms.

It has been suggested by counsel for the Illinois Steel Company, one of the appellees, that an appeal would not lie to this court for the reason that a franchise is involved.

The relief sought by the original bill of the Will County National Bank and Joseph Stephen was the dissolution of the corporation and the winding up of its affairs. The corporation and its stockholders were made parties defendant, and by the decree in the consolidated cause the corporation was dissolved and a permanent receiver appointed to wind up its affairs. The suit was, therefore, one involving a franchise. Coal and Mining Co. v. Edward, 103 Ill. 472.

But the corporation did not appeal from the decree, and there are now no errors assigned by it or any other party calling in question the decree upon that subject. The corporation was defaulted on the bill for its dissolution, and the parties are content with the decree in that respect. No errors being assigned touching that question it can not be raised in this court. The jurisdiction is to be determined by the questions involved in the appeal, and the questions here being entirely independent of the franchise, and having no relation to it or the action of the Circuit Court in reference to it, the appeal was properly taken to this Court. Cheney v. Teese, 113 Ill. 444; Walker v. Pritchard, 121 Ill. 221; Malaer v. Hudgens, 130 Ill. 225; Moore v. Williams, 132 Ill. 591.

On November 30, 1892, when the judgment was entered
in favor of Henry Fish & Sons, and the trust deed to
Chauncey J. Blair was executed, the Joliet Enterprise Com-
pany was manifestly insolvent. Up to that time it had
been carrying on an extensive business in the manufacture
of barbed wire. It was employing about 300 men, and had
on hand manufactured product worth nearly $200,000, and
its plant, which was unincumbered, had cost about $280,000.
It was indebted far beyond its assets, and there was no hope
of its being able to meet its liabilities.

It owed the firm of Henry Fish & Sons, doing business
under the name of the Stone City Bank, $174,000, for bor-
rowed money, evidenced by six promissory notes, with war-
rants of attorney attached, of the same character used by
that firm and by banks generally, in loaning money to their
customers. The banking firm of Henry Fish & Sons con-
sisted of Henry Fish, the father, and his three sons, George
M., Charles M., and Henry M. These three sons were
members of the board of directors of the Joliet Enterprise
Company, and constituted a majority of such board.

The bank had loaned money to the Enterprise Company
during the entire existence of the corporation and the
amount of the indebtedness to the bank had been about the
same for a long time. During the preceding day or night
it became evident that there would be a run on the bank on
the morning of November 30th, and that both the bank and
the corporation would be forced to suspend. Both were in-
solvent under the definition of insolvency given by the Su-
preme Court in American Ex. Nat. Bank v. Atwater,
opinion filed July 19, 1893, where it was said that that term,
when applied to a person, firm or corporation engaged in
trade, means inability to pay debts as they become due in
the usual course of business. Up to the date of the suspen-
sion the corporation had met its liabilities and paid its debts
as they became due, but its assets had not been equal to its
liabilities for some time, and if its creditors had known that
fact and ceased to give it credit it would have been forced
to suspend long before. If the insolvency of the corpora-

O'Donnell v. Illinois Steel Co.

tion is to be fixed at the time when its assets would not satisfy its liabilities, it would seem practically impossible to fix the date. The Circuit Court fixed the date of insolvency at March 31, 1892, and held the loans originating before that date valid and those made afterward invalid. It is urged that the court mistook the evidence and that one of the notes excluded from the judgment was a renewal note tracing back of the date so fixed, but in the view we take of the questions before us, the date when the corporation could be called insolvent is of little importance, and it is immaterial whether such note could or could not be traced back as claimed. There is no doubt that during the time that the loans were made represented by the excluded notes, the corporation was seriously embarrassed; that its assets were not equal to its liabilities due and to become due, and that if all facts had been publicly known it could not have obtained credit and would have been forced to suspend. But during that period it was a "going concern," transacting a large business and meeting its commercial obligations. There is nothing to indicate that the moneys loaned and represented by these notes were loaned with any improper motive or fraudulent purpose toward the corporation or its creditors, or for any other purpose than to aid it in its embarrassment in continuing its business and meeting its obligations. The notes given were the same as that and every other bank always exacted in making loans, and it is not complained that the terms were not as favorable to the corporation as could have been obtained anywhere. If the transactions were fraudulent as to other creditors so as to enable them to invoke the jurisdiction of equity and have them set aside as wrongful interferences with their rights, it must be because of the financial condition of the corporation and the relation that three members of the banking firm sustained to the corporation.

Ordinarily a director is not prohibited from lending money to his corporation when needed and taking security for the loan.

Such transactions constitute a well recognized exception

to any rule imposing limitations upon the power of a director to deal with his corporation. In Twin Lick Oil Co. v. Marbury, 91 U. S. 587, Marbury, who was a director, had loaned the corporation $2,000, and taken a note secured by trust deed. The court found that the loan was made in good faith, to assist the corporation in embarrassment, and it was held that no rule of law forbade a director loaning money to the corporation, in good faith, when it was needed, and that such a rule would deprive a corporation of the aid of those most interested in it, and most likely to render it assistance, and would afford no protection to the corporation. A rule prohibiting a director from advancing money in good faith, in times of embarrassment and need, and taking security for repayment, such as would be required elsewhere, would be highly injurious to corporations. There is no interest in the director in such case conflicting with his duty to the corporation, and it is held that such a transaction, if otherwise free from blame, is not affected by his relation to the corporation. Sutter Street R. R. Co. v. Baum, 66 Cal. 44; Omaha Hotel Co. v. Wade, 97 U. S. 13; Merrick v. Peru Coal Co., 62 Ill. 472; Hartz v. Brown, 77 Ill. 226; Darst v. Gale, 83 Ill. 136; 1 Beach on Private Corporations, Sec. 245; Hopkins v. Ætna Axle & Spring Co., 50 Conn. 597.

If at the time that either of these loans was made, this corporation had reached a condition that placed the directors in a fiduciary relation toward creditors, it would be essential to the right of a creditor to set aside the transaction; that he should prove that the director had obtained some advantage, or that such creditor had suffered some injury by such transaction. If these directors, in making these loans, secured an advantage to themselves, resulting in disadvantage to other creditors, then the transaction might be set aside. To have that effect, it would be necessary to show that some asset of the corporation in which the creditor had an equitable share, had been appropriated in some way to the benefit or advantage of the directors.

There is no evidence tending to show that the banking

O'Donnell v. Illinois Steel Co.

firm obtained any advantage to themselves by loaning money to the corporation, or that they could have anticipated any such advantage. The loans resulted injuriously to the bank, as might have been reasonably expected. Nor was there any disadvantage or injury to the complaining creditors. The loans added to the assets of the corporation the amounts secured to be repaid by the notes. It is not questioned that any other banker might have lawfully loaned the money on the same conditions, but the argument is that such transactions are denied to a director. To establish such a rule would deprive corporations of the aid of those most interested in them, by prohibiting a director of an embarrassed corporation from taking any security for a loan. We do not think that such a rule would be beneficial to corporations or creditors, and we therefore hold that it was error to strike out the two notes excluded by the court from the judgment.

The principal of the six notes amounted to $174,000. The judgment was confessed for $176,420.96. The difference was made up of $1,420.96 included as interest and $1,000 attorney's fees. These items were stricken out by the court. The interest item was an error, as the notes bore no interest until maturity, and the finding in that respect is conceded to be correct. Each of the notes provided for an attorney's fee of $1,000, to be included in the judgment to be entered on such note, and but one such fee was included. The attorney's fee was provided for as part of the original contracts. The court found that some of the contracts originated when the corporation was solvent. The provision for attorney's fees being a part of the original transaction is not like the provision in Hulse v. Mershon, 125 Ill. 52, where, in addition to preferring creditors, gifts of attorney's fees were made to them, but comes under the rule announced in Weigley v. Matson et al., in the same volume on page 64, in which case it is held that such an agreement is not only eminently just, but rests upon a good and valuable consideration. The attorney's fee should not have been stricken out.

The trust deed to Chauncey J. Blair was authorized by resolution of the board of directors of the Joliet Enterprise Company, held on the morning of November 30, 1892, and was executed and filed for record by the corporation immediately thereafter. The debts attempted to be secured had existed some time and were not due. The Circuit Court found, as we think, correctly, that neither the trustee nor any of the parties secured, knew anything about the transaction until after the trust deed was executed and recorded. Two or more of the directors were liable as guarantors for the payment of each debt secured, except the debt of Mrs. Miller, who was their aunt, and whose debt was mostly paid the same day. In securing the debts so guaranteed these directors were acting of their own volition, unsolicited by the creditors, and were securing debts for which they were personally liable. No motive or cause is shown for the act except such as arose out of the relation of the directors to the debts, and we entertain no doubt that in the transaction they were moved solely by their own interest in having the debts secured. The trust deed was not made to prefer the creditors, but to prefer and secure the debts.

That an insolvent corporation may prefer one creditor over another has been frequently decided in this State. Reichwald v. Commercial Hotel Co., 106 Ill. 439; Bouton v. Smith, 113 Ill. 481; Ragland v. McFall, 137 Ill. 81; Glover v. Lee, 140 Ill. 102; Warren v. First Nat. Bank of Columbus, opinion filed October 26, 1893.

But this rule is subject to the qualification that the property of the insolvent corporation is a trust fund to be applied to the payment of the debts of the corporation, and the directors being trustees of the fund can not, in the disposition of it, secure any advantage to themselves not shared equally by other creditors. The directors can not be permitted to deal with the fund in such a manner as to secure preferences to themselves, although they may in good faith give preferences where they have no personal interest. The directors being in possession of the fund with power of disposition of it, have the outside creditors at a disadvantage

and no competition between parties so situated in obtaining payment or security would be fair or permissible. Directors may enforce any contract and avail themselves of any security made or given before the fiduciary relation attached, but after that time they can not acquire any advantage over other creditors. Beach v. Miller, 130 Ill. 162; Roseboom v. Whittaker, 132 Ill. 31; Warren v. First National Bank of Columbus, *supra;* American Exchange National Bank v. Atwater, *supra.*

The trust deed was made by the directors for the purpose of having the trust fund applied to the payment of these debts so as to relieve themselves from liability. In the case of Warren v. First National Bank of Columbus, *supra,* an order had been drawn by the assistant treasurer of an insolvent corporation at Columbus, Ohio, in favor of the First National Bank of Columbus on the Pullman Palace Car Company of Pullman, Ill., as security for two notes of the insolvent corporation, made payable to a firm of which the president of the corporation was a member, and indorsed by said firm to the bank, and the order was held valid. In that case, however, the order was given upon the demand of the bank for further security made upon the corporation, because the firm of which the president was a member had failed, and made an assignment for the benefit of creditors. The president lived in Boston and had nothing to do with the order, which was given solely as the result of the diligence of the creditor. In this case the security was given unasked and unsought merely for the purpose of benefiting the directors to the injury of other creditors. By setting aside such security the holders of the claims are deprived of nothing which they obtained, or would have had but for such purpose of the directors.

We think that the decree in respect to the trust deed was correct, and that the beneficiaries whose debts were guaranteed by directors were not entitled to security which they could only claim through the fraudulent act of directors.

Questions have been raised by appellant as to the right of complainants in the original bill, filed to set aside the

judgment in favor of Henry Fish & Sons and the trust deed, to challenge those transactions, for the alleged reason that they had not exhausted their remedy at law; and also as to the right of Joseph S. Wiley and the Ashley Wire Company to file a cross-bill to the cross-bill of the trustee and others for the foreclosure of the trust deed. As we have held that the complainants did not successfully impeach the judgment, it is not necessary to enter upon any discussion of the question whether they had a right to do so or not. As to the trust deed, the trustee and parties interested filed a cross-bill for its foreclosure, which was answered by parties who then unquestionably had a right to set up the defense made. The decree entered was such as could have been made under the answers without any cross-bill to the cross-bill. Without considering any question concerning the rights of complainants in the original bill of the Cleveland Rolling Mill Company and the Illinois Steel Company, or as to the cross-bill to the cross-bill, which would not affect the conclusion, there was jurisdiction to decide the issues raised as to the trust deed.

Cross-errors have been assigned by the Illinois Steel Company and the National Bank of the Republic.

The greater part of the argument for the Illinois Steel Company is an attempt to establish the proposition that an insolvent corporation can not prefer any creditor over others. That is not the rule in this State, as we have already seen, but such preferences may be made as long as the officers of the corporation do not thereby secure any benefit or advantage directly or indirectly to themselves. It follows that the action of the court which is complained of in holding the trust deed a valid security for the amount due Cornelia A. Miller was right, for in giving her such security no officer of the corporation obtained any benefit or advantage to himself.

On November 30, 1892, at the time of the failure, Mary V. Fish, mother of the directors of that name, was a creditor of the corporation to the amount of $15,000, for which she held its judgment note, and on that day she accepted

from the corporation a conveyance of property, called the Cross street plant, in payment. [ e property was worth no more than the debt, and the [ nsaction was sustained by the court. We concur in that onclusion under the rule above stated. It is urged that the judgment in favor of Henry Fish & Sons should have been reduced by the amount of a note of $29,000 paid to said firm November 30th, and by certain other items which are claimed to have been unlawful preferences. We have held that the banking firm had the right to collect its notes, and if that is so, it could receive payment without suit, and there is no merit in the claims as to the other items.

It is also urged that the trust deed and other transactions of the corporation constituted a voluntary assignment for the benefit of creditors under the statute. The claim is that the trust deed, as a transfer by the insolvent corporation of its property to a trustee charged with the duty of applying the property or its proceeds to the payment of designated debts, fulfilled the requirements of the statute as a voluntary assignment, and that the transactions connected with it constituted unlawful preferences. The instrument amounted simply to a mortgage, leaving an equity of redemption in the corporation. It was in the usual form of a security for the payment of money, and provided for filing a bill for foreclosure in case of default in payment or breach of any of its covenants. Giving a mortgage to secure indebtedness is not held to be making an assignment for the benefit of the mortgagor's creditors. A mortgage would frequently be but an indifferent sort of security under such a rule. The court was right on that question. Weber v. Mick, 131 Ill. 520.

It is also assigned for error that the court fixed the date of insolvency at March 31, 1892, and did not hold the corporation to be insolvent before that. As before stated, we do not regard the exact date when the term insolvent could be applied to the corporation as material in determining the questions presented and have not attempted to pass on that question.

The National Bank of the Republic and the National

Storage Company were defendants in the cause and filed their answers. The National Bank of the Republic in its answer alleged that the Joliet Enterprise Company had delivered to the National Storage Company about 1,194 tons of barbed wire, for which the Storage Company had issued its warehouse receipts; that said National Bank of the Republic loaned to the Joliet Enterprise Company $48,000 and took its note; that said Joliet Enterprise Company indorsed and delivered as collateral security to said note the said warehouse receipts; that said note was due and unpaid, and that said wire was scant security. During the progress of the case an order was made by consent upon a stipulation of the parties that said National Bank of the Republic might sell the wire, and if it should be adjudged that the proceeds belonged to the bank, they should be applied on the debt *nunc pro tunc* as of the dates of the receipt by the bank of the proceeds. Under this order the wire was sold, and the proceeds were adjudged to the bank and ordered to be applied on the debt as of the dates of the receipt of the proceeds in pursuance of said consent order. Such proceeds were insufficient to pay the full amount of the note.

On the hearing the bank claimed the right to thereafter make proof of the whole amount of its note against the insolvent corporation as a general creditor, instead of proving the claim only for the amount due at the time of making the proof. The decree gave the right to prove the claim for the deficiency only, and the National Bank of the Republic has assigned cross-errors thereon. The question propounded is, whether a creditor who has, after the appointment of a receiver and before making proof of his claim, been paid a part of such claim by realizing from collaterals, is entitled to prove the claim for more than is due him when he proves it. The question seems to be answered in the negative by the Supreme Court in the case of Furness v. Union National Bank, opinion filed October 26, 1893, N. E. Rep.,Vol. 35, p. 624. That was a case of an insolvent estate of a deceased debtor in the hands of an administrator, and it was said that if a creditor has realized upon collateral before filing and proving his claim, he can only proceed for

what is actually due him. If the National Bank of the Republic should sue the Joliet Enterprise Company on its note for the purpose of reducing it to a judgment, it could only recover the amount due at the time of the trial. We think that the decree was correct under the rules laid down in the above case.

The decree of the Circuit Court is affirmed in all respects except as to the judgment by confession in favor of the firm of Henry Fish & Sons against the Joliet Enterprise Company, and as to such judgment the decree is reversed and the cause remanded with directions to sustain said judgment for the amount for which the same was entered, except $1,420.96 erroneously included as interest, to be deducted as of the date of said judgment, leaving said judgment at such date at the sum of $175,000, which judgment and interest thereon is to be preserved as a lien upon the property of said Joliet Enterprise Company in favor of said firm of Henry Fish & Sons, and their assignee, under their judgment, execution and levy.

The costs of this appeal will be apportioned as follows: One-half to be paid by Merchants National Bank of Chicago, American Trust and Savings Bank of Chicago, Third National Bank of New York, Will County National Bank, First National Bank of Joliet, and Washburn and Moen Manufacturing Company, appellants, who were beneficiaries under the trust deed, and the other half to be paid by the Illinois Steel Company, the appellee assigning errors on the decree touching the judgment and trust deed.

Decree affirmed in part, reversed in part and remanded with directions.