## RYLANDER *et al.* *v.* SHEFFIELD *et al.*

Directors of a solvent corporation, who were guarantors of the payment of a promissory note given by it for borrowed money, secured by a mortgage on its property, were, when the loan matured, under no duty to the stockholders to enter into an agreement with the lender to extend the loan on terms requiring them to remain bound as guarantors. On the contrary, it was their right at the maturity of the loan to comply with their contract and pay the debt, in which case they became creditors of the corporation with the right to enforce their lien for the payment of their

debt. There was no error, after the mortgage had been duly assigned to these guarantors and foreclosed at their instance,. in refusing to enjoin them from bringing the mortgaged property to sale, although it was their purpose, at the time of taking up the note and mortgage, to enforce the lien thereof by a sale of the property in case the corporation failed to pay the note. Nor was their right to pursue this course affected because at the hearing the corporation was shown to be solvent and able, if granted indulgence, to finally pay off the debt from its income.

Argued May 12, — Decided July 20, 1899.

Petition for injunction.    Before Judge Littlejohn.    Sumter county.    March 4, 1899.

The Americus Manufacturing and Improvement Company was organized with a capital of $100,000, of which $97,770 was paid in.    It bought valuable central property in the city of Americus, on a portion of which it built and furnished a hotel at a cost of about $150,000.    It thus started with a debt of more than $50,000, of which $30,000 was borrowed from P. K. Dederick.    Part of the remainder was borrowed from local banks, and this loan was in part secured by a mortgage on the vacant or park property of the company.    The rest was floating indebtedness, including pressing claims and liens for labor, material, etc.    The loan from Dederick was procured in pursuance of a resolution of the board of directors of the company, passed on March 11, 1892, with the knowledge and assent of the stockholders, empowering the company's officers to execute to Dederick its note or notes for the $30,000 borrowed on five years time, with interest coupons, and to execute as security therefor a mortgage covering the hotel and the lot on which it was situated, "in such form as may be required by the said P. K. Dederick, and to do and to perform such other acts in the name of this company as may be necessary to secure said loan of money."    On the next day the notes and mortgage were executed, and, as required by Dederick, thirteen individuals, including the directors of the company, executed to him their joint and several guaranty of the prompt payment of both the interest notes and the principal note.    In March, 1897, the company defaulted in the payment of the principal and interest then due; whereupon Dederick demanded payment of the guarantors, and offered to transfer to

them the mortgage and notes.    He refused to extend or renew
the loan, except upon payment of the interest and the renewal
of the same guaranty, and all of the guarantors refused to be-
come again so bound.    In May thereafter the debt was paid to
Dederick with funds supplied by four of the guarantors and by
two outside parties.    Dederick sold and conveyed to these six
persons all his right, title, and interest in and to the mortgage
and the debt thereby secured, as well as in the guaranty.    On
February 2, 1898, the transferees obtained a rule nisi for the
foreclosure of the mortgage, and a rule absolute was granted
at the following May term of the superior court.    Advertise-
ment and sale of the property were postponed from time to
time, pending various efforts to obtain a loan to pay off the
mortgage debt.    Finally it was advertised to be sold in Febru-
ary, 1899; and on the 6th day of that month a number of
stockholders brought a petition for injunction to prevent the
sale.    On the hearing the injunction was denied, and the plain-
tiffs excepted.

It is contended by the plaintiffs, that, by giving a renewal
of the guaranty when the mortgage debt matured, the direc-
tors of the company could have obtained from Dederick a re-
newal or extension of the loan, and it was a violation of their
trust not to do so, it being the wish of the stockholders, and
to their interest, to obtain such renewal; that the company is
solvent, its property worth upwards of .$50,000 even at the
present low rate of valuation in stringent times, and under
fair conditions it would sell for that sum or more, whereas by
pressing it to sale under the pending levy and advertisement
it will be sacrificed; but if time be given and a sale postponed
for a few months (or about two years, according to one witness),
a loan can be obtained to pay off the indebtedness, or a sale
for something like the intrinsic value of the property (which
is about $100,000) can be made.    It is further contended that,
by forcing the property to sale at this time, the transferees of
the mortgage (two of whom are still directors of the company)
would profit at the expense of the stockholders, who would
utterly lose all they have paid into the company.    For the
defendants it appears, that the transferees of the mortgage

8

took up the same at the earnest request of the stockholders, and at considerable personal sacrifice to themselves, some of them borrowing money in order to do so, on which they are paying interest, while they have received no interest on the mortgage debt for nearly two years which have elapsed since they paid the debt to Dederick; that they have co-operated in the numerous efforts during that time to obtain for the company a new loan to pay this debt, have granted all the requests made by the directors for postponement of foreclosure and of advertisement and sale; that they would gladly transfer the mortgage debt upon payment of the amount due, and they have no desire to gain anything at the expense of any stockholder. They admit that the company is solvent, and that the property in question is worth $35,000 or more; and aver that they had made arrangements whereby it would have brought at least that sum at the sale advertised for February, and that they are informed and believe that it would have brought largely more. The other matters touched upon by the allegations and testimony appear to be immaterial to the controlling question decided in the opinion which follows.

*Allen Fort* and *E. C. Speer*, for plaintiffs.
*Hooper & Crisp*, for defendants.

LITTLE, J.   To properly determine whether there was any error committed in the refusal to grant the injunction as prayed for, it is only necessary to consider and determine one question of law — that is, can the directors of a private corporation, who, with the knowledge and assent of the stockholders, became guarantors of a debt created by the corporation for a loan of money secured by mortgage on the property of the corporation, pay the debt at maturity, take a transfer of the mortgage, and enforce the same by foreclosure and sale of the mortgaged property to secure the amount of the debt paid by them? The plaintiffs in error say they can not, for the reasons that the corporation is solvent and the value of the property is largely in excess of the amount of the debt; that the holder of the note and mortgage agreed at maturity that he would extend the time of payment of the same, if the same directors would con-

tinue their guaranty; that the directors occupy a fiduciary re-
lation to every stockholder; that they can not exercise their
trust for their own private benefit, and their private interest
must yield to their official duty; that a director can not create
a relation of antagonism in interest to the stockholder, nor law-
fully make a profit out of his trust.    The principles of law thus
stated seem to be sound and controlling in cases where they can
be made applicable.    In the present case, however, the defend-
ants in error, who were directors, with the assent of the stock-
holders of the corporation used their personal credit to raise
necessary funds for the benefit of the corporation, by becoming
personally liable for a debt lawfully created by the corpora-
tion.    The holder of the debt then became a creditor of the
corporation, as well as a creditor of those directors who person-
ally endorsed or guaranteed the debt.    When the debt ma-
tured, it was the duty of the corporation to pay the same; and
on failure to do so, it was the personal duty of the guarantors so
to do; and on failure of payment, the creditor had a right, not
only to enforce his lien against the property of the corporation,
but to secure as well a personal judgment against the several
directors who guaranteed the payment; and there can be no
question that when the latter paid the debt and took a trans-
fer of the lien, which in their contract of guaranty they were
entitled to have, the rights of the creditor passed to them.
Possessing such property rights, it must follow that the right
of enforcing them exists as an incident of ownership.

The facts of this case clearly distinguish it from those cases
where the directors of a corporation seek by their fiduciary
relation to promote their own interest at the expense of the
stockholders.    There is no reason why a solvent corporation
may not borrow money from a person who occupies the posi-
tion of a director in such corporation, and give him a mort-
gage to secure the debt thus created.    It is said in such cases
that the giving of the mortgage is viewed with suspicion, but
that it is legal when it is perfectly free from actual fraud.  91
U. S. 587.    And in the case of Hopson v. Aetna Co., 50 Conn.
597, it was expressly ruled that directors who guaranteed a
corporate debt may take a mortgage from the corporation as

security, and foreclose the same. It must be remembered, however, that a distinction may be shown to exist when the corporation so creating the lien is insolvent. We are not now concerned as to the rules applicable in the case of liens created by insolvent corporations; for, confessedly, this corporation was solvent when it created the lien, and is so now. From a number of adjudicated cases the following rules have been deduced by Mr. Taylor in his Treatise on the Law of Private Corporations: § 634: "Directors or other officers may, when they honestly deem it for the interest of the corporation to borrow, advance it money on terms as favorable as any on which they could have procured the money for it from other sources; and they may take from the corporation security for their loan. But they can not—at least when the corporation is insolvent—take advantage of their inside position to secure their existing debts to the injury of other creditors of the corporation; and no more in recovering their debts or enforcing their security, than in the original transaction of loaning the money, can they disregard the interest of the corporation. Under such circumstances, not only may they not avail themselves of their control over the affairs of the corporation to oppress it, but they can not make unconditional and unrestricted use of legal means open to outside creditors." Citing 77 Ill. 226; 86 Ky. 206; 21 Am. L. Reg. N. S. 443. It does not appear from the record in this case that the defendants in error sought to oppress the stockholders of the corporation in any way. The debt which they sought to enforce was a legal one due by the corporation; it could at any time have prevented foreclosure of the mortgage by the payment of the debt; and there was no obligation on the part of the directors who personally guaranteed the debt, when the original contract matured, to continue that contract, even if the corporation from its revenues could eventually pay off the debt. If it did not, because of the want of money, no legal reason existed why the holders of the debt should wait an indefinite time for payment. None of the circumstances show that the defendants in error, either in the original transaction or in subsequent proceedings to collect their debt, were guilty of any fraud toward the other

stockholders of the company, nor was their action calculated in any way to oppress the stockholders. The judgment of the court below is　　　*Affirmed. All the Justices concurring.*